IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

TYRONE D. ARDS,

                Plaintiff,

  v.

CODY SAYLOR, REBECCA EAGLEBURGER,           ORDER
TRENT LANDT, SONYA ANDERSON,
REBECCA FELDMAN, BECKY KRAMER,             17-cv-458-jdp
JOSEPH CICHANOWICZ, LAVERNE WALLACE,
JASON GODFREY, GABRIEL JOHNSTON, and
ANGELA MINK,

                Defendants.

---

Pro se plaintiff Tyrone Ards is a prisoner incarcerated at the Wisconsin Secure Program Facility (WSPF). Ards has a history of suicide attempts, and he alleges that defendants, who are WSPF employees, ignored Ards's suicide risk by leaving him with large dosages of medicine. He also alleges that defendant Cody Saylor unnecessarily used pepper spray on him.

This order addresses four motions filed by Ards: (1) a motion for the court's assistance in recruiting counsel, Dkt. 15; (2) a motion to supplement his motion for assistance in recruiting counsel, Dkt. 67; (3) a motion for sanctions, Dkt. 16; and (4) a motion for reconsideration of the order denying his motion for a preliminary injunction, Dkt. 38. I will grant his motion to supplement his motion regarding counsel, but deny the other three.

**A. Motion for assistance in recruiting counsel**

Ards moves for the court's assistance in recruiting counsel, Dkt. 15, and asks to supplement his motion by adding additional reasons why the court should assist him, Dkt. 67. I will grant his motion to supplement and consider it along with his original motion.

Litigants in civil cases do not have a constitutional right to counsel, and I can only assist in recruiting counsel who may be willing to serve without compensation. *See* 28 U.S.C. § 1915(e)(1); *Pruitt v. Mote*, 503 F.3d 647, 653–54, 656 (7th Cir. 2007) (en banc). Before assisting in recruiting counsel, this court requires a pro se litigant to satisfy two requirements. First, the pro se litigant must show that he has made reasonable attempts to recruit counsel on his own. *See Jackson v. Cty. of McLean*, 953 F.2d 1070, 1072–73 (7th Cir. 1992) ("[T]he district judge must first determine if the indigent has made reasonable efforts to retain counsel and was unsuccessful or that the indigent was effectively precluded from making such efforts"). This court generally requires a pro se litigant to provide the names and addresses of at least three attorneys whom he tried to recruit.

Second, once the pro se litigant has shown that he made some reasonable attempts to recruit counsel, the court "must examine whether the difficulty of the case—factually and legally—exceeds" his abilities to litigate his claims. *Perez v. Fenoglio*, 792 F.3d 768, 784 (7th Cir. 2015) (internal citation and quotation marks omitted). Assessing the litigant's abilities is a "practical" inquiry, *Santiago v. Walls*, 599 F.3d 749, 762 (7th Cir. 2010), and no fixed requirement exists, *Pruitt*, 503 F.3d at 655. But courts generally consider the litigant's "literacy, communication skills, educational level, and litigation experience" in light of the complexities of the case. *Id*. "The question is not whether a lawyer would present the case more effectively than the pro se plaintiff" but instead whether the pro se litigant can "coherently present [his case] to the judge or jury himself." *Id*.

Here, Ards has not satisfied either requirement. Ards says in his motion to supplement his motion for recruiting counsel that he has already satisfied the first requirement, Dkt. 67, ¶ 4, but he is mistaken. Ards has attempted to recruit counsel on his own for one of his other

2

cases before me, *Ards v. Anderson*, and I found attorneys who were willing to represent him. No. 16-cv-341, Dkt. 139 (Wis. W.D. Feb. 15, 2018). This does not mean that Ards need not attempt to recruit counsel in all other cases. Ards must attempt to recruit counsel who is willing to represent him in this case or explain why he cannot attempt to do so.

As for the second requirement, it is too early to tell whether the complexities of this case warrant recruiting counsel for Ards. Ards's submissions indicate that this case turns on what happened to him: specifically, whether WSPF staff sent him large dosages of medicine and whether he was subjected to pepper spray unnecessarily. Ards's submissions also indicate that he can at least tell his side of the facts. I will deny Ards's motion for assistance in recruiting counsel.

**B. Motion for sanctions**

Earlier in the case, Ards moved for a preliminary injunction that compels WSPF prison officials to ensure his safety. He indicated that prison staff members were leaving him with medicine, ignoring the fact that he was suicidal, and that he intended to attempt suicide yet again by overdosing on medicine. Dkt. 7. In response to Ards's motion, defendants' counsel filed declarations of Shawn Gallinger, a correctional officer, and Maria Lemieux, a psychological associate at WSPF, indicating that WSPF officials implemented various measures to ensure Ards's safety. While Ards's motion was pending, Ards managed to stockpile medicine inside a tissue holder and attempted to overdose on medicine. Defendants' counsel filed a status report the following morning, informing the court that Ards had attempted to overdose and that prison officials were investigating the incident. Dkt. 12 and Dkt. 13. The parties briefed Ards's preliminary injunction motion, and the court held a hearing at which WSPF staff members testified that WSPF would voluntarily implement additional measures to ensure Ards's safety.

cases before me, *Ards v. Anderson*, and I found attorneys who were willing to represent him. No. 16-cv-341, Dkt. 139 (Wis. W.D. Feb. 15, 2018). This does not mean that Ards need not attempt to recruit counsel in all other cases. Ards must attempt to recruit counsel who is willing to represent him in this case or explain why he cannot attempt to do so.

As for the second requirement, it is too early to tell whether the complexities of this case warrant recruiting counsel for Ards. Ards's submissions indicate that this case turns on what happened to him: specifically, whether WSPF staff sent him large dosages of medicine and whether he was subjected to pepper spray unnecessarily. Ards's submissions also indicate that he can at least tell his side of the facts. I will deny Ards's motion for assistance in recruiting counsel.

**B. Motion for sanctions**

Earlier in the case, Ards moved for a preliminary injunction that compels WSPF prison officials to ensure his safety. He indicated that prison staff members were leaving him with medicine, ignoring the fact that he was suicidal, and that he intended to attempt suicide yet again by overdosing on medicine. Dkt. 7. In response to Ards's motion, defendants' counsel filed declarations of Shawn Gallinger, a correctional officer, and Maria Lemieux, a psychological associate at WSPF, indicating that WSPF officials implemented various measures to ensure Ards's safety. While Ards's motion was pending, Ards managed to stockpile medicine inside a tissue holder and attempted to overdose on medicine. Defendants' counsel filed a status report the following morning, informing the court that Ards had attempted to overdose and that prison officials were investigating the incident. Dkt. 12 and Dkt. 13. The parties briefed Ards's preliminary injunction motion, and the court held a hearing at which WSPF staff members testified that WSPF would voluntarily implement additional measures to ensure Ards's safety.

I concluded that the Ards's safety was ensured and denied his motion for a preliminary injunction.

Ards now moves for sanctions, arguing that prison staff members and defendants' counsel should be punished for the following reasons: (1) defendant Cody Saylor failed to respond to Ards's motion for a preliminary injunction as required; (2) Gallinger and Lemieux lied to the court because despite the safety measures indicated in their declarations, Ards ended up attempting suicide; and (3) defendants' counsel misstated facts on how Ards attempted to overdose (e.g., stating that Ards overdosed on Tylenol as opposed to ibuprofen). Dkt. 16. I will deny Ards's motion for sanctions.

First, Saylor did respond to Ards's motion. Dkts. 10–12, 29. Second, Gallinger and Lemieux did not lie; they did not (and could not) absolutely guarantee Ards's safety. Third, defendants' counsel had less than a day to investigate the incident; minor errors in their submissions were excusable. I will deny Ards's motion for sanctions.

## C. Motion for reconsideration

WSPF's measures for ensuring Ards's safety includes precluding him from having any container in his cell, because Ards has stored liquid medicine in a container and has attempted suicide by drinking it. Because of this no-container restriction, Ards cannot have juice and milk with his meals, as they are given in cartons, in which Ards could store medicine. Captain Dane Esser of WSPF has testified that Ards receives his nutrients from other food items, such as apples, oranges, and cheese instead of juice or milk. Dkt. 46 at 41:2–4. Ards is also regularly monitored and cannot eat his food outside of his cell. He also cannot have in his cell any paper, cleaning supplies, shampoo, bed sheets, and hygiene items.

Ards now moves for reconsideration, asking me to remove the no-container restriction and to allow him to eat his meals outside of his cell. Dkt. 38. Ards also wrote a letter asking me to remove all other restrictions. Dkt. 44. His requests are outside of the scope of a motion for reconsideration, because WSPF officials imposed the restrictions on their own, not as part of any order granting injunctive relief. Ards also has not followed this court's procedures for obtaining injunctive relief, even though the court staff has already sent him a copy of the procedures. No. 16-cv-341, Dkt. 66.

But even if Ards's motion were procedurally sound, I would deny it. The restrictions may be harsh, but WSPF officials imposed them to ensure Ards's safety. Ards states in his motion for reconsideration that he no longer has a plan to stockpile medicine, Dkt. 38, ¶ 4, but this turned out to be untrue. After filing the motion for reconsideration on September 29, 2017, Ards attempted to overdose yet again, on December 2, 2017. Dkt. 50, ¶ 3. Ards also states that having paper in his cell poses no danger and that he has never used any paper to harm himself. Dkt. 44, at 1. This is not true either. Ards testified during his deposition that when he attempted to hang himself from a vent in his cell, he managed to insert a bed sheet into the vent by folding a health-service request form, securing it to one end of the bed sheet, and inserting the folded form and the sheet through the vent. Dkt. 31 (Ards Dep. 39:2–9). From what I can tell, Ards still poses a danger to himself, and I will defer to prison officials' judgment in ensuring Ards's safety.

ORDER

IT IS ORDERED that:

1. Plaintiff Tyrone Ards's motion to supplement his motion for the court's assistance in recruiting counsel, Dkt. 67, is GRANTED.

2. Plaintiff's motion for assistance in recruiting counsel, Dkt. 15, is DENIED.

3. Plaintiff's motion for sanctions, Dkt. 16, is DENIED

4. Plaintiff's motion for reconsideration, Dkt. 38, is DENIED.

Entered March 30, 2018.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge